United States District Court
Southern District of Texas
**ENTERED**
July 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH F. WEAVER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-388 |
| | § | |
| ERICK  ECHEVARRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth Amendment were violated by defendants Erick Echavarry, Susanna Corbett, and Irene Cussins[1] when they deliberately failed to provide him with proper medical care. Defendants Corbett and Cussins filed a motion to dismiss for failure to state a claim on April 2, 2018 to which Plaintiff responded on April 18, 2018 (D.E. 14, 16).  Defendant Echavarry filed a motion for judgment on the pleadings on May 31, 2018 to which Plaintiff responded on June 18, 2018 (D.E. 18, 19).  For the reasons stated herein, it is respectfully recommended that Defendants Corbett and Cussins's motion to dismiss be denied and Defendant Echavarry's motion for judgment on the pleadings be granted.

---

[1] Irene Cussins's name has changed to Irene Benavides Soliz (D.E. 14, n. 1).  However, because she is referred to as "Cussins" in the documents related to the case, she will continue to be referred to as "Cussins" to avoid confusion.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this Court because the actions about which plaintiff complains occurred in Beeville, Bee County, Texas, which is located in the Southern District of Texas.

## BACKGROUND

The following recitation of facts is taken from the pleadings and the attached documents with the facts construed in the light most favorable to plaintiff.  On December 26, 2015, Plaintiff, who was housed at the McConnell Unit in Beeville, Texas, slipped and fell, injuring his right hand.  He was taken to the prison infirmary and then to the local hospital.  An X-ray showed that Plaintiff had a comminuted distal radial fracture with likely intra-articular extension and overlaying soft-tissue swelling.  The doctor at the hospital told Plaintiff he would need surgery to properly set the broken bones.  The doctor placed a temporary cast on Plaintiff's wrist until he could be transported to the prison hospital in Galveston, Texas.

Transportation was arranged to take Plaintiff to Galveston but the surgery was cancelled because of crowding at the hospital.  On December 28, 2015, Defendant Cussins asked Plaintiff about his hand and when he tried to tell her he was in pain she told him, "They fixed you.  You're done."  On December 30, 2015 Plaintiff submitted a request for help on an I-60 form, stating that he was in severe pain and had a terrible rash. He was struggling with daily activities such as showering and sleeping and every movement of his hand caused pain.  He received a response from M. Snyder, R.N., dated

January 5, 2016, telling him he had an appointment pending in Galveston (Ex. D. to Orig. Compl., D.E. 1 at p. 8).

On January 4, 2016, Plaintiff submitted a Step 1 grievance, complaining that his wrist was causing him terrible pain.  He was given Tylenol 3 twice a day for four days but it did not relieve his pain.   Defendant Echavarry had rewrapped his wrist on December 26, 2015 when he returned from the hospital, which caused his fingers to turn blue.  He also was told by the nursing staff to "go home" and was not given pain relief. He had a rash with severe, unbearable pain which was unrelieved by Ibuprofen.   On January 2 and 3, 2016, he had contacted the infirmary and someone he identified as "R.N. White" told him that nothing could be done.   Approximately one month later, on February 2, 2016, M. Blackwell, R.N., responded:  "Per our incoming Medical Call Log there is no indication that a call was received on 12/26/15 with your concerns. Furthermore providers are responsible for ordering pain medication and not nursing." (Ex. J to Orig. Compl., D.E. 1 at pp. 11-12).

Plaintiff filed a Step 2 grievance on February 10, 2016, once again complaining about being in constant, unbearable pain because his broken wrist had not been set.  He received a response on March 16, 2016, telling him that he had received Tylenol 3 for a total of six days and Ibuprofen for thirty days after breaking his wrist.  In addition, an evaluation at the hospital in Galveston on March 11, 2016 showed that Plaintiff had a "right distal radius fracture malunion with radial shortening and malunion" which was limiting his range of motion.  Documentation showed that he would benefit from surgery, but they would wait for completion of the malunion, which would occur up to six months

3 / 17

post injury.  Plaintiff had been seen in occupational therapy for a splint and range of motion exercises to prevent stiffness of his hand and fingers.  He was to continue to be medically unassigned, receive Tylenol 3 for pain, and to follow up in three months about the surgery (Ex. K to Orig. Compl., D.E. 1 at pp. 13-14).

In the meantime, Plaintiff had seen Defendant Echavarry on January 7, 2016 when he removed the temporary cast and replaced it.  Echavarry told Plaintiff he would have surgery the following week but Plaintiff was not called for surgery.  On January 18, 2016 Plaintiff submitted another I-60 form directed to Defendant Corbett stating that he had been told surgery was scheduled but he never was called for surgery.  He was in great pain and asked for the surgery to be scheduled as soon as possible (Ex. E to Orig. Compl., D.E. 1 at p. 8).

On January 22, 2016 Plaintiff had an appointment with Defendant Corbett who told him that he would leave for his surgery appointment the following week but he was not called.  On January 29, 2016 Plaintiff submitted an I-60 directed to Defendant Corbett, reminding her that she had told him he was scheduled for surgery but he was never picked up.  He was out of Ibuprofen and had no tape to wrap his arm for the shower.  Plaintiff received a response noting that he was scheduled for surgery that week (Ex. F to Orig. Compl., D.E. 1 at p. 9).

On February 11, 2016 Plaintiff submitted another I-10 to Defendant Corbett's attention, telling her that he had once again been scheduled for surgery but had not been picked up.  He had asked for shower supplies and pain medication but had been given only supplies.  In a response dated February 12, 2016, it was noted that a follow-up

appointment had been scheduled for February 5, 2016 and was signed by Defendant Cussins (Ex. G to Orig. Compl., D.E. 1 at p. 9).

Plaintiff submitted another I-60 to Defendant Corbett's attention advising her that he did not receive notice that he had an appointment on February 5, 2016 and did not get a lay-in.  Plaintiff received a response dated February 23, 2016 stating "scheduled soon," "chart review transport," and "note on 1/26/16 MPV change to chain please update."  It is unclear who signed the response (Ex. H to Orig. Compl., D.E. 1 at p. 10).  On February 26, 2016 Plaintiff submitted an I-60 to Defendant Corbett's attention, asking her to please call him in before rescheduling the surgery date so that they could discuss the condition of his hand.  Defendant Cussins signed the response dated February 26, 2016 with the note, "PSC—02/26/16 0700."

On February 29, 2016 Plaintiff had an appointment with Defendant Corbett who appeared unconcerned.  On March 11, 2016 he had an appointment at the hospital in Galveston.

Plaintiff alleges that Defendants' conduct violated his Eighth Amendment right to be free of cruel and unusual punishment because they were deliberately indifferent to his serious medical needs.  Defendants Corbett and Cussins argue that Plaintiff did not properly exhaust his administrative remedies because he did not name them in any of the grievances he filed.  Defendant Echavarry asserts that Plaintiff's claims against him should be dismissed because they fail to overcome Echavarry's entitlement to qualified immunity.

## APPLICABLE LAW

### A.  Motions to Dismiss

Defendants Corbett and Cussins move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant Echavarry moves to dismiss the claims against him pursuant to Rule 12(c).  Both motions to dismiss are subject to the same analysis.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c) tests the formal sufficiency of the statement of a claim for relief.  It is not a procedure for resolving disputes about the facts or the merits of a case.  In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *Hines v. Alldredge*, 783 F.3d 197, 200-201 (5th Cir. 2015).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the assumption are true (even if doubtful in fact) . . . .

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007) (internal citations and quotations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held the following:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], 550 U.S. at 570, 127 S.Ct. at 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127

> S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has acted unlawfully.
> *Ibid.*   Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'" *Id.* at 557, 127 S.Ct. 1955.

*Iqbal*, 556 U.S. at 678.  Accordingly, in order to survive a motion to dismiss, a plaintiff's

complaint must allege enough facts to show that a plausible claim for relief exists on the

face of the pleading.

### B.  Exhaustion of Administrative Remedies

Defendants Corbett and Soliz argue that Plaintiff did not properly exhaust his

administrative remedies with regard to them because he did not complain about them in

his grievances.  Plaintiff claims that he did exhaust his administrative remedies because

he sent several I-60 forms to Corbett that were reviewed and answered by Cussins and

other medical personnel.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion

requirement applies to all inmate suits about prison life, whether involving general

circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A

prisoner is required to exhaust administrative remedies even if damages are unavailable

through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 740-741 (2001).  A

prisoner must complete the administrative review process in accordance with all

procedural rules, including deadlines, as a precondition to bringing suit in federal court.

*Woodford v. Ngo*, 548 U.S. 81 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 216 (2006).

The TDCJ-CID currently provides a two-step procedure for presenting administrative grievances.  *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).  Step 1 requires the prisoner to submit an administrative grievance within fifteen days of the complained-of incident.  *Johnson v. Johnson*, 385 F.3d 505, 515 (5th Cir. 2004).  If the prisoner receives an adverse decision, he has ten days to file a Step 2 grievance, which is handled at the state level.  *Id.*  Both steps must be completed for the grievance to be considered exhausted.  *Id.* (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

The primary purpose of the exhaustion requirement is to provide prison officials with "time and opportunity to address complaints internally."  *Id.* at 516 (quoting *Porter*, 534 U.S. at 525).  Prisoners must exhaust their administrative remedies properly and, generally, mere "substantial compliance" is not enough to satisfy the exhaustion requirement.  *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

The Fifth Circuit discussed how much detail is necessary in a prison grievance form in *Johnson*.  The Court noted that it has given relatively little guidance on what a prisoner must say in a grievance to properly exhaust his claims and added that as a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit.

 If an inmate were complaining about the actions or inactions of a particular prison employee, he ordinarily would be expected to provide details regarding the identity of the employee and facts regarding the incident.  In contrast, if the inmate were complaining more generally about something like vermin in his cell or high prices in the commissary, the prison would be able to investigate the situation even if specific employees were not named.  *Id.* at 517.  The Court noted that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."  *Id.* at 522.  *See also Jones*, 549 U.S. at 219 (concluding that exhaustion is not *per se* inadequate simply because an individual later sued was not named in grievances).

In addition, courts have noted that "[e]xhaustion is defined by the prison's grievance procedures, and courts may neither may add or subtract from them."  *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015).  *See also Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion.") and *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("[T]he prison's procedural requirements define the steps necessary for exhaustion.").

In the Step 1 grievance form Plaintiff completed, an inmate is directed to "state who, what, when, where. . . ." with regard to the grievance (Ex. J to Compl., D.E. 1 at p. 11).  Plaintiff did not name Corbett or Cussins in either of the grievance forms he submitted, although he mentioned Defendant Echavarry and "RN White" in his Step 1 grievance and "Ms. Blackwell" in his Step 2 grievance.  Plaintiff also complained in the Step 1 grievance that someone on the nursing staff told him to "go home, no pain relief."

While the grievances do not name Corbett or Cussins, they do make clear that Plaintiff is complaining that nurses and mid-level providers at the prison infirmary are ignoring his complaints about pain related to his broken wrist.  Moreover, it is not clear whether Plaintiff knew the names of the nursing staff members about whom he complained when he wrote his Step 1 grievance.  He submitted the Step 1 grievance on January 4, 2016, but the first mention of defendant Corbett in the record is an I-60 directed to Corbett where Plaintiff stated that on January 7, 2016 Corbett had told Plaintiff he had an appointment in Galveston (Ex. E to Compl., D.E. 1 at p. 8).  It also is unclear when Plaintiff learned the identity of Defendant Cussins, because the first time her name is mentioned in the record is on February 12, 2016, when she signed a response to an I-60 (Ex. G to Compl., D.E. 1 at p. 9).

In *Patterson v. Stanley*, 547 Fed. Appx. 510 (5th Cir. 2013) (per curiam), the Fifth Circuit found that a plaintiff had exhausted his administrative remedies even though he did not name particular defendants in his grievances when he complained that the unit's "medical staff" had discontinued his eyeglass prescription without an eye exam and ordered that his prescription sunglasses be seized as contraband.  The court found that the defendants offered nothing to show that the plaintiff's reference to "medical staff" did not give prison officials notice and an opportunity to address Patterson's complaint about the sunglasses or that it did not comply with TDCJ requirements.  *Id.* at 512.  Also, TDCJ did not reject the grievances for failure to name the medical staff and the response given to the plaintiff's Step 2 grievance indicated that TDCJ understood that the plaintiff was complaining about his eyeglasses because the complaint was referred to the Office of

Professional Standards and the plaintiff was scheduled for an ophthalmology examination. *Id.*

Similarly, in this case, TDCJ appeared to understand that Plaintiff was complaining about a lack of medical care and pain medication related to his broken wrist in his Step 1 grievance, because it was stated in response that there was no indication that a call was received on December 26, 2015 with his concern[2] and that providers rather than nurses were responsible for ordering pain medication.  The response to the Step 2 grievance, like the one in *Patterson*, indicates that the grievance was referred to the Office of Professional Standards for TDCJ Health Services and that after receipt of the grievance, Plaintiff was evaluated at the hospital in Galveston, prescribed occupational therapy for malunion of the fracture, and was to attend a follow-up appointment for discussion of surgery (Ex. K to Compl., D.E. 1 at p. 14).  Thus, it appears that the grievance served its function of alerting prison officials to the problem Plaintiff was having with not having been transported for surgery on his wrist after breaking it.  Accordingly, it is recommended that Defendants Corbett and Cussin's motion to dismiss for failure to exhaust administrative remedies be denied.

Plaintiff also filed grievances in December 2016 and January 2017, complaining about the delay in treatment of his wrist and also about a delay in treatment for complications from eye surgery that was performed on September 30, 2016 (Exs. L and M to Orig. Compl., D.E. 1 at pp. 15-18).  Defendants Corbett and Cussins argue that the

---

[2] It is unclear why the person responding to the grievance found no evidence of a call on December 26, 2015.  Defendants do not contest that Plaintiff broke his wrist and was transported to the local hospital on that day.

grievances were not timely with regard to his claims against Defendant Corbett.  Plaintiff asserts that he was complaining about a continuous problem.

Defendants are correct that the second set of grievances was filed too late to be considered properly filed.  However, because the first set of grievances was timely filed, this conclusion does not affect the recommendation that Plaintiff be found to have exhausted his administrative remedies.

### C.  Section 1983 and Qualified Immunity

Defendant Echavarry moves for judgment on the pleadings, asserting that he is entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983 claims against him. Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, a plaintiff must satisfy a two-prong test.  First he must claim that

12 / 17

the defendant committed a constitutional violation under current law.  Second, he must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complained.  *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).

While it often will be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

When a qualified immunity defense is asserted in an answer or motion to dismiss, the court must do no more than determine whether the plaintiff has filed a short and plain statement that rests on more than conclusions alone.  *Anderson v. Valdez*, 845 F.3d 580, 589-590 (5th Cir. 2016) (citing *Shultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  After applying this general pleading standard to the complaint, the court may then, in its discretion, insist that a plaintiff file a reply tailored to the defendant's answer or motion to dismiss asserting qualified immunity.  *Id.* at 590 (citing *Shultea*, 47 F.3d at 1433-1434).

**D.  Eighth Amendment Violation**

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment.  Although the Eighth Amendment does not mandate a certain level of medical care for prisoners, the Supreme Court has found that it imposes a duty on prison officials to ensure that inmates receive adequate medical care.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations omitted).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it also may be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 842, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

Deliberate indifference is an extremely high standard to meet. A plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted). Although inadequate medical treatment may, at some point, rise to the level of a constitutional violation, malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citations omitted). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061

(5th Cir. 1997) (citations omitted).   "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

A disagreement about recommended medical treatment generally is not sufficient to show deliberate indifference, but the denial of recommended medical treatment "is often sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).   In addition, "a delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In his complaint, Plaintiff asserts that Defendant Echavarry is a mid-level medical provider who, on January 7, 2016, removed Plaintiff's cast and replaced it.  He also told Plaintiff that he would have a surgery appointment the following week, but Plaintiff was never called for the appointment (D.E. 1 at ¶ 17).   Plaintiff makes no other allegations against Echavarry.  In his Step 1 Grievance, Plaintiff stated that Echavarry rewrapped his wrist which made his fingers turn blue (Ex. J to Compl., D.E. 1 at p. 11).  In response to the motion to dismiss, Plaintiff makes the conclusory allegation that Echavarry and the other defendants failed to provide adequate medical care because they unnecessarily delayed treatment of his serious medical condition, but he does not make additional factual allegations against Echavarry.

Plaintiff has failed to allege facts that connect Echavarry to his complaints of delayed medical treatment.  He alleges that Echavarry provided some medical care to him, albeit in a way that he claims caused him additional pain.  He also alleges that Echavarry told him a surgery appointment was scheduled but that he was never called for

it.  These facts do not state a claim for deliberate indifference based on failure to provide medical care, or causing a delay in receipt of medical care.   Accordingly, it is recommended that Plaintiff's claims against Echavarry be dismissed under Federal Rule of Civil Procedure 12(c).

## **CONCLUSION**

Based on the foregoing, it is respectfully recommended that Defendants Cussins and Corbett's motion to dismiss for failure to exhaust (D.E. 14) be DENIED and that Plaintiff be allowed to proceed on his claims against them.  It is further recommended that Defendant Echavarry's motion to dismiss (D.E. 18) be granted and Plaintiff's claims against Echavarry be DISMISSED.

Respectfully submitted this 19th day of July, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).